Moncure, J.
By articles of agreement, in writing but not under seal, entered into between the appellees Polly, Woods & Co. and the appellant, the Baltimore *450 and Ohio Rail Road Company, on the 1st day of Februai7 1851, the appellees agreed, in consideration of the payments therein mentioned, to graduate and prepare ^01’ ^le laying down of the railway tracks thereon, the I72d section of said road, according to the manner and conditions set forth in the agreement. The work was 1° be completed on or before the 1st of October 1852; and for doing it certain prices were agreed to be paid for the different kinds of work, as classified in the agreement. Then follows a clause in the agreement in these words: “ The above payments shall be made in the following manner; that is to say, during the progress of the work, and until it is completed, there shall be a monthly estimate made by the aforesaid engineer (meaning the local or resident engineer having charge of the particular work for the time being), of the quantity, character and value of the work done during the month, or since the last monthly estimate, four-fifths of which value shall be paid to the said parties of the first part, at such places as the chief engineer may appoint; and when the said work is completed and so accepted by the said chief engineer, there shall be a final estimate made by the (local or resident) engineer of the quantity, character and value of said work, agreeably to the terms of this agreement, when the balance appearing to be due to the said parties of the first part, shall be paid to them, upon their giving a release under seal to the said company, from all claims or demands whatsoever growing in any manner out of this agreement. And it is expressly understood, that the monthly and final estimates of said engineer, as to the quantity, character and value of the work done during the month, or since the last monthly estimate, and at the completion of the work, shall be conclusive between the parties to this contract; unless the chief engineer may deem it proper at any time to revise and alter, in such manner *451 as he may see fit, the monthly or final estimates of said engineer, in which event the estimate of the chief engineer shall be substituted to all intents and poses in place of the estimate of said engineer; it being, however, wholly optional with the said chief engineer to exercise such power of revision or not.” Then follow other provisions, which, for the present at least, it is unnecessary to notice.
A similar agreement was entered into between the same parties on the same day in regard to the 182d section of the said road; except that the prices agreed to be paid for the different kinds of work were generally different in the two agreements, and the appellees used the style of Woods, Polly & Bro. in regard to the latter agreement, while they used that of Polly, Woods & Co. in regard to the former.
The work on the 172d section was finished on the 4th of December 1852, and that on the 182d section on the 5th of September 1852. The monthly and final estimates were made of the quantity, character and value of the work done on each section, as provided for in the said agreements.
In August 1853 the appellees instituted an action of assumpsit against the appellant. The declaration contained but two counts, which were the common counts for work and labor, &c. and on an account stated. The bill of particulars filed with the declaration was for the work done on the said two sections of the said road. After various proceedings were had in the action, a verdict was found for the appellees on the general issue, for fifteen thousand six hundred and thirty-two dollars and seventy-six cents, with interest on fifteen thousand one hundred and sixty-one dollars and fifty-four cents from the 4th day of December 1852 until paid ; and judgment was rendered accordingly on the 18th of November 1854. The appellant obtained a supersedeas to the judgment.
*452 The first error assigned in the petition for the superse^eas> is founded on the first and second bills of exceptaken by the appellant to opinions of the court rejecting three special pleas which were offered on the 23<J of June 1854, and again on the 10th of November 1854.
In each of these three special pleas, it is averred that the work, &c. mentioned in the first count of the declaration, so far as the same had been done, &c. by the appellees, was so done, &c. under and by virtue of the two written agreements of the 1st of February .1851.
In the first special plea it is further averred, that a final estimate was made of said work, &c. according to said agreements, amounting to a certain aggregate sum; the whole of which had been paid, except five thousand three hundred and fifty dollars and ninety-nine cents, which the appellant offered to pay into court on account of what is claimed by the appellees in the action, upon receiving their release under seal from all claims or demands growing out of said agreements ; and that the appellant is not indebted to the appellees in a greater amount than the sum last mentioned.
In the second plea it is further averred, that the appellees did not complete the work on or before the day of : meaning no doubt the day fixed for its completion in the agreements.
In the third plea it is further averred, that at the completion of the work and the acceptance thereof by the chief engineer, as in said agreements provided, a final estimate under each of them was made by the chief engineer, of which the appellees had notice j yet that they would not give to the appellant a release under their seals from all claims or demands growing out of said agreements, though specially requested by the appellant so to do.
*453 Without expressing any opinion upon the question as to the time of offering these pleas, I think, if they present any defences at all, they amount to the issue, and were therefore properly rejected. A plea amounts to the general issue when it traverses matter which the plaintiff avers, or must prove, to sustain his action; whether such traverse be direct or argumentative. Indebitatus assumpsit will lie to recover the value of work done under a special contract, if it be fully executed on the part of the plaintiff, and nothing remain to be done under it but the payment of a sum of money by the defendant. The existence of this state of facts raises an implied promise to pay the money. The plaintiff must prove the facts to sustain his action; and a plea traversing any of them or averring facts inconsistent therewith, must therefore amount to the general issue. If the plaintiff in such case should declare specially on the contract, expressly averring the performance of all conditions precedent; a plea denying such performance would of course amount to the general issue. The effect is the same under an indebitatus count, which is allowed in such cases to avoid prolixity in pleading, and which implies an averment of the performance of all conditions precedent, the performance of which is necessary to entitle the plaintiff to maintain his action. Matter which amounts to the general issue cannot be pleaded specially. “ But there are instances (says Bayly, J. in Carr v. Hinchliff, 10 Eng. C. L. R. 408), in which the defendant has the option of giving his defence in evidence under the general issue, or of putting it on the record. One of them is when the plaintiff’s right of action is confessed and avoided by matter ex post facto; e. g. by a plea of payment, or accord and satisfaction. The other is when the plea does not deny the declaration, but answers it by matter of law;” as for instance, gaming. See also Hayselden v. Staff, 31 Id. 307; Morgan, &c. v. *454 Pebrer, 32 Id. 202; Cousins v. Padden, 2 Cromp. Mees. & Ros. 547; Jones v. Manney, 1 Mees. & Welsb. 333; Grounsell v. Lamb, Id. 352; 1 Chit. Pl. 477-479, 526-528, 714, 738 and 742. The defence presented by each of the special pleas in this case is, that the aetion, though indebitatus assumpsit, is founded on a special contract subject to a condition precedent which has not been performed by the plaintiffs.
But it is contended that the pleas were good, because they set forth matter of law proper for the consideration of the court and not of the jury; and that in every such case the matter may be specially pleaded. I do not understand that any thing can be pleaded specially which amounts to the general issue, whether it be matter of law or not. Infancy, coverture, usury and gaming, are matters of law which may be pleaded specially or given in evidence under the general issue, at the option of the defendant. But they do not amount to the general issue; because they do not traverse any matter which the plaintiff must prove to sustain his action. They give color of action to the plaintiff, as every good special plea must, although they show that in law he never had a good cause of action. In this respect only they differ from matters in confession and avoidance; which admit that the plaintiff once had a good cause of action, but show that it has since been discharged. All matters of defence which give color of action to the plaintiff, may be pleaded specially; and all matters of defence which do not give such color of action, amount to the general issue, and must be given in evidence under it. 1 Chit. Pl. 526, 530.
That a plea amounts to the general issue, is a sufficient reason for rejecting it, especially when offered out of time and as an additional plea to that of the general issue already pleaded. Warner v. Wainsfort, Hob. R. 127; Gardner v. Webber, 17 Pick. R. 407.
*455 The second error assigned in the petition is presented in the third bill of exceptions. Upon the trial of the cause, the plaintiffs, in opening the case, having testimony tending to prove that they had done and performed for the defendant work and labor upon sections 171 and 182 of said rail road, and the price or value thereof; thereupon, in the same connection, offered further testimony to prove, independently of any special contract, the quantity, quality and kind, in proper classification of said work. To the introduction of which testimony the defendant objected, and with a view to its exclusion, moved the court to suspend the reception of the plaintiffs’ opening testimony, and offered to prove the execution of said contract, that said work was done under it, and that the same was not complied with in certain particulars. But the court overruled the objection, and admitted said testimony as offered by the plaintiffs. To which opinion and action of the court the defendant excepted.
In an action of indebitatus assumpsit, the plaintiff may prove that work was done at defendant’s request, and the value of it. If it appear, in the course of his evidence, that the work was done under a special contract, which remains in full force and which ascertains the price, he has no right to prove the value of the work, and can only recover the price of it, as ascertained by the contract, upon proving that the conditions of the contract have been complied with, and that nothing remains to be done in execution of it, but the payment of the price by the defendant. So, if it appear from the plaintiff’s evidence, that the work was done under a written contract, he will be required, before he goes any further, to produce the contract, or duly account for its non-production, and prove its contents by secondary evidence. Or, if it appear, for the first time, in the cross-examination of the plaintiffs’ *456 evidence, or by the defendant’s evidence, that the work was d°ne under a special contract, or that the contract in writing, the plaintiff will then be required to proceed in the same way as if the fact had appeared ín the course of his own evidence in chief.
But a defendant has no right to arrest the plaintiff in the course of making out his case, by an offer to show that the work was done under a special contract, it not having appeared from any thing proved by the plaintiff, that there was any such contract. It devolves on the plaintiff to make out his case, and then on the defendant to make out his defence. Until the plaintiff has ended, the defendant has no right to begin.
Whether evidence is admissible or not, is certainly a question for the court and not the jury to decide. The court must, therefore, decide all questions of fact necessary to enable it to decide the question of admissibility. When a witness is offered by the plaintiff, the defendant may object to him as incompetent before he is examined, and, if need be, offer evidence of his incompetency. This is naturally, if not necessarily, a preliminary enquiry to be made before the witness is examined.
So, also, upon the same principle, if the defendant object to evidence as inadmissible for any other cause, the question of admissibility seems, naturally, to be a preliminary question, to be disposed of before the evidence is heard. It is desirable, as far as possible, that irrelevant and improper evidence shall not be heard by the-jury, as it may not be possible entirely to remove the effect of it by its subsequent exclusion.
But it is impossible always to determine, a priori, whether evidence is admissible or not. It .very often consists of many links, forming together one connected chain. These links must be offered separately; and until the case is closed, it cannot generally be deter *457 mined whether the chain will be perfect or not. If it be not, then all the links which have been received may be thrown out.
It follows that a great deal must be left to the discretion of the court in this matter. It is desirable, as before stated, that the jury should not hear illegal evidence; but it is often convenient, if not necessary, that they should first hear it, and that it should be excluded afterwards. If the court does right in excluding it afterwards (on motion made for that purpose), the judgment will not be reversed because it might or ought not to have been heard at all. I therefore think the court did not err in overruling the objection of the defendant, and admitting the testimony offered by the plaintiffs, as mentioned in the third bill of exceptions.
The next assignment of error which will be noticed, is the fifth; which, though not next in order of numbers, appears to be next in chronological order, and to be governed by somewhat the same principle which governs the one last considered. It is founded on the sixth bill of exceptions which was taken to the opinion and action of the court in overruling the motion of the defendant to act upon the five instructions asked for by him, or to give such other as the court might deem proper, before the argument of the cause was entered upon, and in declining to act upon said instructions or to give any other until the argument was closed.
As it is desirable that no illegal evidence should be heard by the jury, even though it be excluded after-wards, so it is also desirable that the case should not be argued on such evidence before them, even though they be properly instructed in regard to it afterwards. The effect of it, to some extent, is to excite their prejudice and draw away their minds from the matter in issue. But human institutions cannot be perfectly *458 free from exception, and we must be content to make ^ie nearest approach to it which the nature of things permit. We must give the court and the jury oredit for intelligence and fidelity in the discharge of their respective functions. It is the duty of the court to decide all questions of law which may be pertinent the case and be referred to its decision by any party. But it may exercise its discretion as to the time of deciding them : And if it can better decide them after the argument of the case than before, it has a right to postpone the decision until after the argument. We must presume in this case that the court properly exercised its discretion in declining to act upon the instructions asked for by the defendant, or to give any other, until the argument was closed; and I am therefore of opinion it did not err in doing so.
The next question in order is, Did the court err in refusing to give the five instructions asked for by the defendant, and in giving the third and fourth of them in a modified form ? This is the appellant’s third assignment of error, and is founded on his fourth bill of exceptions. That bill states that the defendant having introduced evidence tending to prove that the work and labor declared for in the first count of the declaration, was done by the plaintiffs, under the two written contracts of the 1st of February 1851, before mentioned; that during the progress of said work, regular monthly estimates of the work done were made out and paid by the defendant to the plaintiffs; and that at the completion of said work a final estimate was made out, and the amount thereof communicated to the plaintiffs; and the plaintiffs having offered evidence tending to prove unfairness and fraud on the part of the engineer who made out said estimates ; and that during the progress of said work on section No. 182, one of the plaintiffs, to wit, Charles Polly, assigned his interest in the contract referring to *459 the work on said section, to a third person. The defendant thereupon moved the court to give to the jury the five instructions aforesaid.
First; the court was asked to instruct the jury that if they believed from the testimony that the work, &c. set out in the first count of the declaration, and charged in the bill of particulars, was done by the plaintiffs under the said two written contracts, then, although they may believe that no sufficient final estimates have been made in pursuance of the terms of said contracts, yet the plaintiffs are not entitled to recover in their action, so far as said count for work, &c. is concerned, unless they further find that the plaintiffs, after demand of the defendant, or other proper exertions on their part, have been unable to procure such a final estimate as is required by said contracts.
Parties competent to enter into a contract are always^? bound by their contract, if it be not repugnant to any rule or policy of the law. Contracts for the construction of rail roads usually contain similar provisions to those which are contained in the contracts in this case in regard to monthly and final estimates of the quantity, character and value of the work, to be made by the engineer having charge of the work. Such provisions are dictated by convenience if not by necessity, and tend to do justice to both parties. An engineer is an indispensable agent and officer in the construction of a rail road, and it is the duty as well as the interest of the proprietors of the road to employ honest and competent persons as engineers. An honest and competent engineer having charge of the work, is certainly the most suitable person to estimate its quantity, character and value. Indeed, he can do it with almost perfect accuracy. He is well acquainted, from his pursuits, with the character and value of such work. He superintends it in its entire progress. He sees and can properly classify and accu *460 rately measure all the variety of material encountered in progress of the work. After the work is done the excavated material or most of it covered up, it is impossible for any other person, even the most competent engineer, to estimate the quantity, character and value of the work with any thing like accuracy. These provisions should therefore be upheld and encouraged, if they be not unlawful. It was at one time supposed that they might be unlawful, as tending to oust the courts of law and equity of their jurisdiction, according to the principle of the cases of Kill v. Hollister, 1 Wils. R. 129; Thompson v. Charnock, 8 T. R. 139; and others of that class. That principle is that an agreement to refer to arbitration, until it is executed by the making of an award, is not a good bar to an action or suit upon the matter agreed to be referred. But it is now well settled, that provisions of the kind in question do not contravene that principle and are lawful and binding provisions. This subject has recently undergone very full consideration in England in the case of Scott v. Avery, decided first by the Court of«exchequer, 8 Welsb. Hurl. & Gord. 487; then by the Court of exchequer chamber, Id. 496 ; and lastly by the House of lords, 36 Eng. L. & E. 1. It has also been recently considered by this court in the case of Condon v. The South Side Rail Road Company, ante, p. 302, The provisions for the final estimates in this case then created a valid condition precedent to the payment of the balance appearing to be due to the plaintiffs. And now let us recur to the question presented by the first instruction asked for by the plaintiffs.
A condition precedent, if it be possible and lawful, however unreasonable it may be, must generally be strictly performed, to give the right of action which depends upon it. We have an instance of this kind in Dorsley, v. Wood, 6 T. R. 710; an insurance case, *461 in which it had been stipulated that “ persons insured should give notice of the loss forthwith, deliver in an account, and procure a certificate of the minister, &c. of the parish, importing that they knew the character, &c. of the assured, and believed that he really sustained the loss, and without fraud.” It was held that the procuring of such a certificate was a condition precedent to the right of the assured to recover, and that it was immaterial that the minister, &c. wrongfully refused to sign the certificate. “ It is perfectly immaterial (said Ashurst, J.) whether they have entered into an improvident contract; if they choose to take the burden upon themselves, they cannot call on the insurance office until they have complied with the condition.” “ The cases (said Grose, J.) are strong to show that if a person engage for the act of a stranger, he must procure that act to be done.” See also Morgan v. Birnic, 23 Eng. C. L. R. 414; and Grafton, &c. v. The Eastern Counties Railway Company, 8 Welsb. Hurl. & Gord. 699, 22 Eng. L. & E. 557; Glenn v. Leith, Id. 489.
But there are cases in which the. performance of a condition precedent may be dispensed with; when the party seeking the enforcement of the contract has done every thing that could be done on his part to carry it into effect. In the United States v. Robeson, 9 Peters’ R. 319, payment had been contracted to be made on “producing duplicate certificates of the commanding officer.” The court said, “ Where the parties in their contract fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done every thing on Ms part which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he *462 is unable to do so. And as this was not done by the defendant in the District court, no evidence to prove service other than the certificates should have been admitted by the court. Had the defendant proved that application had been made to the commanding officer for the proper certificates, and that he i-efused to give them, it would have been proper to receive other evidence to establish the claim.” In Wilson v. York and Maryland Line Rail Road Company, 11 Gill & John. 58, Stephen, J. said, “It cannot be left to the jury to make the estimate upon other evidence than that stipulated by the parties, without the plaintiff’s showing that the proper evidence was not attainable after he had used proper and reasonable endeavors to obtain the same without effect.” Wherever the defendant by his own act or neglect prevents the performance of the condition precedent, he thereby excuses it, and the plaintiff may recover as if he had performed the condition. 1 Chit. PI. 326.
✓ In this case the final estimate could only be made by the engineer of the defendant, and the duty of appointing one therefore devolved on it: and when appointed he was its agent and officer. If the plaintiffs had been unable to obtain a final estimate by reason of the failure of the defendant to appoint an engineer, or the refusal of the engineer to make an estimate, proof of that fact would have excused the performance of the condition precedent, and they would have- been entitled to recover without a final estimate. Herrick v. Belknap’s est. & Vermont Central R. R. Co. Verm. R. 673; Bedfield on Eailways 214, note. So also, upon the same principle, if the plaintiffs had been unable to obtain a svfficient final estimate by reason of unfairness and fraud on the part of the engineer, they would have been entitled to recover. The first instruction as asked for by the defendant, seems to concede this, but exacts of the plaintiffs, in case of an insuffi *463 cient final estimate having been made, the necessity of proving that they demanded of the defendant, or used other proper exertions to procure such a final estimate as is required by the contracts, but without effect. Two questions seem to be involved in the instruction. First, whether fraud on the part of the engineer in making the final estimate, renders it legally insufficient; and if it does, secondly, whether it is incumbent on the plaintiffs to demand of the defendant, or use other proper exertions to procure a sufficient final estimate. The importance of having an estimate made by a competent engineer in charge of the execution of the work, and the fact that the contract expressly requires it, render it improper to deprive the defendant of the benefit of such an estimate, unless it be very clear that it has been forfeited by the defendant’s own act or default. It is not likely that an engineer would be guilty of fraud in making an estimate. But he possibly may be. And if he is, there can be no doubt the fraudulent estimate would be invalid in equity; but whether at law or not, may admit of question. If the final estimate be considered as an award, it cannot be avoided at law by proof of fraud or corruption on the part of the engineer in making it: the only mode of obtaining relief against an award on the ground of fraud or corruption on the part of the arbi- ^ trators, being by bill in equity; unless the reference was by order of court in a pending suit or under the statute; in which case the award may be set aside on that ground in a court of law. A final estimate certainly does bear some analogy to an award. But the analogy is not complete. The engineer is not an indifferent person, but the officer and agent of the defendant. He may be a stockholder in the company which employs him, and be thus interested in the work which he estimates, and yet is legally competent to discharge the duty confided to him. Ranger v. The *464 Great Western Railway Company, 27 Eng. L. & E. 35; Monongahela Navigation Company v. Fenlon, 4 Watts Serg. 205. The principle discussed in the case of Dimes v. The Grand Junction Canal Company, 16 Eng. L. & E. R. 63, that a person cannot be a judge in his own cause, does not apply to this case. 27 Id. 45. p>y -¿ile express contract of the parties, the final estimate of the defendant’s engineer is made the condition precedent of the defendant’s obligation to pay for the work; and thei'e is nothing unlawful in the contract. But while the defendant is bound only to pay the amount of the final estimate of its own engineer, that estimate must be valid in equity as well as at law. If it be a fraudulent estimate, the defendant cannot take advantage of it. To do so would be, in a manner, taking advantage of the defendant’s own wrung. A principal cannot take advantage of the fraud of his agent, even though he did not actually participate in the perpetration of the fraud. The diffei’ence between an ordinary award and such a final estimate as was stipulated for in this case is, that in the former case a cause of action is supposed already to exist, which is referred to the decision of arbitrators instead of a court, and the award of the ai'bitrators is like the judgment of a court; whereas, in the latter case, the final estimate is itself a part of the cause of action and a condition precedent, the performance, or a sufficient excuse for the non-performance, of which must be proved by the plaintiff to maintain the action. The performance of the condition in this case devolved on the defendant, not on the plaintiffs; although the obligation of the defendant to the plaintiffs was dependent thereon. If the defendant’s engineer has made a fraudulent final estimate, it is not a good performance, and is therefore legally insufficient. We cannot know, and it is not for us to know, whether the estimate was in fact fraudulent or not. It was the province of the jury to de *465 side that question upon the evidence before them; though they ought certainly to have been well satisfled of the fraud to have been justified in disregarding the final estimate. The bill of exceptions states that the plaintiffs offered evidence tending to prove unfairness and fraud on the part of the engineer who made out the estimate, and we must consider the case as the fraud were fully proved. Considering the fraud as proved and the estimate as insufficient, the remaining question is, Was it incumbent on the plaintiffs to show that they had, without effect, demanded of the defendant or used other proper exertions to procure a sufficient final estimate, in order to complete their excuse for the non-performance of the condition precedent, and to enable them to maintain the action ? In my opinion, it was not. The final estimate required by the contract could only be made by the engineer having charge of the work. If the final estimate made by him was fraudulent, he was wholly unfit to make another; and it would not be right to subject the plaintiffs to another made by him, which might be as little reliable as the first. It was the fault or the misfortune of the defendant to have a fraudulent engineer. The chief engineer had power under the contracts to revise and alter the estimates of the local or resident engineer, but it was wholly optional with him to exercise such power or not; and I do not think it was Incumbent on the plaintiffs to invoke the exercise of that power in regard to a fraudulent estimate. In my opinion, therefore, the court did not err in refusing to give the first instruction asked for by the defendant.
In Milner v. Field, 5 Welsb. Hurl. & Glord. 829, 1 Eng. L. & E. 531, cited in 2 Rob. Pr. (new) 411, a building contract between A and B contained a proviso, that the payments thereby agreed to be made by B, should only be due provided the certificate of the surveyor of B, for the time being, should first be obtained. *466 A having sued in indebitatus assumpsit for the balance alleged to be due, it was held, that under the general issue, the absencfe of the certificate was a good answer to the action, and that the plaintiff was not at liberty to show that it was withheld fraudulently and in collusion with the defendant. Pollock, C. B. in delivering the judgment of the Court of exchequer, said, Even if the certificate “ is withheld by fraud, that is only the subject of a cross-action.” This is the only case I have seen which goes to that extent, and is contrary to what I think is the more reasonable and convenient rule laid down or recognized in the cases already cited from 9 Peters 319, 11 Gill & John. 58, and 27 Verm. 673.
Second; the court was asked to instruct the jury that if they believed from the testimony that the said work, &c. was done, &c. under the said two written contracts, then the plaintiffs are not entitled to recover in this action for such work, &c., unless the jury further believed from the evidence that the plaintiffs had given or offered to give to the defendants, upon their receiving the full amount of final estimates, properly made out, under the terms of said contracts, a release under seal from all claims or demands whatsoever growing in any manner out of said contracts.
I think the meaning of this instruction is somewhat equivocal. It may mean that the giving or offering to give a release was a condition precedent, whether the final estimates which the defendant’s evidence tended to prove were in fact made out, were properly made out under the terms of said contracts or not; or it may mean, that the giving or offering to give a release was a condition precedent, supposing, or if the jury should believe, that the said estimates were so properly made out; that is, were not fraudulent estimates. In the former sense, the instruction would have been improper, and was rightly refused. In the latter, it *467 was a proper instruction, and ought to have been given. The making of the final estimates and giving releases for the amount due thereon, were both conditions precedent, but the latter is dependent on the former. If there were no estimates, there could have been no releases; and fraudulent estimates were as none at all in this respect. If the fact that the final estimates made out were fraudulent, excused the plaintiffs from using any exertions to procure any other, a fortiori it excused them from giving or offering to give releases. I think the refusal of the court to give the instruction was at least calculated to mislead the jury; and that it ought to have been given with such an explanation of its meaning as to cause its being understood by the jury in the latter of the two senses above mentioned. The Baltimore & Ohio R. R. Co. v. McCullough, 12 Gratt. 595, shows that the giving of the releases in this case was a condition precedent to the plaintiff’s right of action for the balances appearing to be due on the final estimates.
Thirdly; the court was asked to instruct the jury that if they believed from the testimony that the said work, &c. was done, &c. under the said two written contracts, and that in accordance with said contracts, final estimates as to the work, &c. done under each had been made out by the engineers therein designated to perform that duty; and further, that the full amount of said final estimates had been paid to the plaintiffs, the greater part before the institution of this suit, and the residue into court to the credit of this suit, with costs up to the time of such payment; then, unless they believed further from the testimony that there was fraud or intentional misconduct on the part of the engineers making up such estimates, they ought to find for the defendant on the first count of the declaration.
The court refused to give this instruction as asked *468 for; but gave it with the following addition: “ But jul7 may ft'om ^e evidence correct any intrinsic apparent on the face of the said estimates, and as to any work and labor done and materials furnished by plaintiffs to and for defendant not specially provided for in the said contracts, the jury will find aecording to the facts as proved before them. Which said last named instructions were given to the jury by the court, superadding orally that if the jury undertook to correct any errors intrinsic and apparent on the face of the estimates, they must confine themselves to the estimates alone, and not take into consideration any extrinsic facts or any proof in the case, and that they were confined to the correction of errors apparent on the face of the final estimates, or that they must be satisfied that the final estimates were produced by the corruption of the resident engineer, before they could disregard the said final estimates.’*
I think the court erred in refusing to give the instruction as asked for, and also in making the addition it did thereto. When a party asks for a proper instruction, it is the duty of the court to give it substantially as asked for. The third instruction asked for by the defendant in this case was proper and unexceptionable : The addition made thereto by the court was calculated to mislead the jury. It does not appear that there were any intrinsic errors apparent on the face of the estimates; nor does the bill of exceptions show that there was any evidence before the jury as to any work, &c. not specially provided for in the said contracts. What is said on those subjects, is, therefore, an abstraction. If intrinsic errors had been apparent on the face of the estimates, the court ought to have pointed them out specifically to the jury. The addition made to the instruction, takers in connection with what was superadded orally by the court, was contradictory and conflicting in itself; in *469 saying, first, that the jury may from the evidence, correct any intrinsic errors, &c.; and then, that if they undertook to correct any intrinsic errors, &c. they must confine themselves to the estimates, and not take into consideration any extrinsic facts, or any proof in the case.
/ Fourthly; the court was asked to instruct the jury that if they believed from the testimony that the said work, &c. was done, &c." under the said two contracts ; that final estimates had been properly made out in pursuance of said contracts; and that the plaintiffs had submitted themselves to the action of the engineers designated in said contracts, both as to the monthly estimates and final estimates therein provided, in every particular, except that they objected to the final estimates when made known to them; then, in the absence of proof of any fraud or other misconduct on the part of said engineer, the jury can only find for the plaintiffs under the first count, upon the basis of taking said final estimates to be conclusive between the parties.
The court refused, also, to give the instruction as asked for, but gave it with this addition: “ Unless there is error apparent on the face of the estimates, or the jury are satisfied that said estimates were fraudulently made up by the engineers, as explained in giving the third instruction, to which reference is had, and the same is herein incorporated.”
Most of the observations made in regard to the third instruction and the addition thereto, equally apply to the fourth instruction and the addition thereto. The fourth instruction is unexceptionable in form and substance, and the court erred in not giving it, without the addition. See Kidwell v. The Baltimore and Ohio Rail Road Co. 11 Gratt. 676.
The fifth instruction asked for by the defendant was *470 intended to present the proposition that one of the plaintiffs having during the progress of the work assigned his interest in one of the contracts to a person not a party to the suit, therefore the plaintiffs are not entitled to recover in this action for any work done under that contract. As this point was not relied on in the argument, no other notice will be taken of it than to say that it is certainly not maintainable, and that the court did not err in refusing to give the instruction.
The fourth error assigned is founded on the fifth bill of exceptions, from which it appears that on the trial of the cause, the plaintiffs having offered evidence tending to show that certain excavation, constituting part of the work in controversy, was of solid rock, and the defendant having offered evidence tending to show the contrary; the defendant thereupon moved the court to have the jury taken to view the premises ; having shown to the court that the points of examination were situated in the county of Marshall, on the line of the said rail road, about thirty miles from Wheeling; and having offered to send the jury to the said points whenever desired, upon the trains of the defendant, or by any other mode of conveyance, and to defray all expenses incident to the taking of said view. But the court overruled the motion; and the defendant excepted.
This motion was no doubt founded on the Code, p. 629, ch. 162, § 10 ; which provides that “ the jury may in any case, at the request of either party, be taken to view the premises or place in question, or any property, matter or thing relating to the controversy between the parties, when it shall appear to thq, court that such view is necessary to a just decision; provided the party making the motion shall advance a sufficient sum to defray the expenses of the jury, and *471 the officers who attend them in taking the view; which expenses shall be afterwards taxed like other legal costs.”
This court cannot say that the Circuit court erred in overruling the motion, unless it appears from the record that a view was necessary to a just decision. It does not so appear. It only appears that evidence was offered, by one party tending to prove one thing, and by the other the contrary. It does not appear that there was any difficulty in deciding the question on the whole evidence, even if it appears that had any such difficulty existed, it might have been removed by a view. The court might have had good cause for believing the evidence on one side, and not believing that on the other.
The fifth assignment of error has already been considered. The sixth is, in the action of the court, as set forth in the defendant’s seventh bill of exceptions; as to which it is contended, that upon the fact there disclosed, the court ought either to have set aside the verdict, or permitted the jury, if so disposed, to correct it. The facts, so far as deemed material, are substantially as follows: When the jury were retiring on Saturday morning the 18th of November 1854, the judge of the court having official occasion to be absent from the court-house during the day, at his suggestion it was agreed by the court and counsel on both sides, that in his. absence the clerk of the court should receive the verdict and discharge the jury; such being a customary practice in the court. While the jury were in their room they sent for the clerk, who declined going, informing them through the sheriff, that in the absence of the court and counsel, he could have no communication with them. Late in the evening of that day, the court not being adjourned, the jury agreed upon their verdict and returned it. There was no exception to the form, or time or manner of return *472 ing it; and the clerk received and recorded it, and discharged the jury. The court did not sit on Monday the 20th of November. At its sitting on Tuesday morning the 21st, the defendant’s counsel suggested to the court that a portion of the jury had made a mistake in the verdict which had been rendered at a late hour on Saturday evening, or had misunderstood its effect, and requested that the jury might be recalled together for the purpose of enquiring of them as to their understanding of the verdict. The court objected but the counsel for the plaintiffs consented that the jury might be reassembled. In the afternoon of the 21st of November, the jury came into court. The counsel for the plaintiffs consented that the jurors might be asked simply, “Is this your verdict?” but objected to their being asked any question as to their understanding of its legal effect. The court directed the jury to be polled and the question put, after the verdict being read to them: “Is this your verdict?” without the jurors being sworn. To which question they all replied that they had assented to the verdict. But three of the jurors went on to state that their understanding when they rendered it was that the sum mentioned in the verdict was subject to a reduction by the sum of five thousand three hundred and fifty dollars and ninety-nine cents paid into court by the defendant at the last term ; and one of them went on further to say that since the jury had been discharged he had conversed on the subject of this understanding of the jury with one of the counsel for the defendant. The counsel alluded to then stated to the court that, after the discharge of the jury, he had conversed with two of them, and ascertained from one that he understood the verdict was to be reduced as aforesaid, and from the other that he did not. The court interposed, and spoke of the impropriety of polling the jury after it had been discharged, &c. The counsel for the defen *473 dant then, for the first time, objected to the verdict, that it was invalid, because it was received by the clerk instead of the court, notwithstanding the sent of the counsel of the parties previously given, that it should be so received. The said counsel said they would insist on the point, or at least would not waive it, and that the matter was in the hands of the court. The court decided that the reception of the verdict by the clerk and his discharge of the jury was regular and proper, and that it could not interfere with the verdict so rendered and entered up, except in some one of the regular methods appointed by law. To which action of the court the defendant excepted.
A verdict is not complete and valid until it is reh-\ dered in open court by the jury, and received and re- J corded by the clerk. Until then any juror may change I his opinion and withdraw his assent to the verdict. The jury may be polled by the court, and ought to be if requested by either party, for the purpose of ascertaining, with certainty, whether all the jurors understand and agree in the verdict. When a jury in a civil case, or a case of misdemeanor, agree in their verdict during a recess of the court, and wish to separate before the court will sit again, it is the practice in England to permit them to do so, upon their giving a privy verdict to the judge at his chambers; and it is the practice in New York and some other states, to permit them to do so, upon their sealing up their verdict. But in either case, and although the parties expressly agree that the jury may deliver a privy or a sealed verdict, it is of no validity until it is delivered and assented to by the judge in open court; and the same right then exists to have them polled as in the case of a general verdict. Any of the jurors may then dissent from the verdict to which they had previously agreed, and the jury may find a different verdict. 10 Bacon’s Abr. Verdict, B; Bunn v. Hoyt, 3 John. R. *474 255; Root v. Sherwood, 6 Id. 68. In that case, the cour^ said, “ There is no verdict of any force but a verdict given openly in court. The previous agreement that the jury might seal up their verdict, did not take away from the parties the right to a pub-lie verdict duly delivered.” Blackley v. Sheldon, 7 Id. 32; Fox v. Smith, 3 Cow. R. 23; Douglass v. Tousey, 2 Wend. R. 352; Lawrence v. Stearns, 11 Pick. R. 501. In that case, Shaw, C. J., delivering the opinion of the court, said: “ The only verdict which can be received and regarded as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict given in and assented to, in open court, as the unanimous act of the j ury, and affirmed and entered of record, in the presence and under the sanction of the court. A convenient practice has been adopted in this country, authorizing the jury, when they agree during the adjournment of the court, to seal up their verdict and separate, and come in and affirm it at the next opening of the court. But in such case the verdict is to be affirmed in open court as the unanimous act of the jury, and in presence of the whole panel, so that each juror has an opportunity to express his dissent to the court in case his decision has been mistaken or misrepresented by the foreman or his fellows; or in case he has been forced into acquiescence by improper means. Such an affirmation is the only evidence the court can receive of the free and unanimous assent of the jury to the verdict.”
The practice which prevails in the Circuit court, of authorizing the clerk, with the consent of the parties, to receive the verdict and discharge the jury, during a recess of the court, is not sanctioned by any authority, legislative or judicial. The ill effects of it is strongly illustrated in this case. The consent of parties, which certainly can cure many errors and irregularities, cannot, I think, legalize this practice. Parties *475 may refer their disputes to the decision of arbitrators, and may prescribe their mode of proceeding; but when they resort to the tribunals constituted by they cannot, at pleasure, change the modes of proceeding which the law has prescribed for the government and direction of those tribunals. They cannot change the relative functions of the court and jury, nor authorize the court to delegate an important part of its functions to the clerk. Consent cannot give jurisdiction to a court having no jurisdiction of the subject matter, nor annex repugnant conditions to an estate. Upon the same principle, consent cannot authorize a clerk, in the recess of the court, to receive a verdict and discharge the jury. If the irregularity does not appear upon the record, of course no advantage can be taken of it in an appellate court. But if the objection be made at the proper time and place, and be put upon the record, it must prevail, notwithstanding the previous consent of the parties.
I am therefore of opinion that it was not competent for the parties, by their consent, to authorize the clerk to receive the verdict and discharge the jury during the recess of the court. But if it was, certainly it was competent for them, by their consent, to have the jury, after such discharge, reassembled in court and polled, for the purpose of ascertaining whether they assented to the verdict. This was done; and it was thereby ascertained that at least three of the jurors did not assent to the verdict in the literal terms in which it was written, but understood that the sum mentioned therein was subject to the heavy reduction of five thousand three hundred and fifty dollars and ninety-nine cents, which had been paid into court. The defendant was certainly entitled to credit for that large sum. But it is quite natural that, having been paid into court pending the suit, it should have been *476 overlooked by the jury, or they should have supposed I'hat it was not necessary for them to allow the credit, that it would be allowed by the court as a matter of course. That the credit was-not given by the jury, jg extremely probable, from the further fact that interest was allowed by the jury from the 4th day of December 1852, the day when the work .on the 172d section was finished according to the final estimate; which is inconsistent with the deduction of any subfsequent credit. It is true that a court will not, generally, set aside a verdict on the statement or affidavit of a juror that he did not understand the verdict. But here there was no motion to set aside a verdict. ¡'There was in fact no verdict. The question was, whether that which the jury had agreed and had delivered to the clerk, should be made their verdict by their assent in open court. It was proper for the court, therefore, to hear all that the jurors had to say upon the subject, and to be well satisfied whether they understood and fully concurred in the verdict. Under these circumstances, I think the court ought to have ordered a new trial, or at least to have sent the jury back to their room to consider further of their verdict.
The seventh and last assignmént of error is, that the court erred in overruling the motion for a new trial, upon the ground that the verdict was contrary to the evidence, and the law as applicable to the evidence.
There is not such a certificate of facts in this case as will enable this court to revise the judgment of the Circuit court, on the motion for a new trial. The certificate, in part at least, is of the testimony and not the facts; and as to much of the testimony, it is certified that it was conflicting. It is impossible, therefore, for this court to say whether the Circuit court erred or not in overruling the said motion.
*477 But for the other errors0 before mentioned, I am of opinion that the judgment must be reversed, the verdict set aside, and the cause remanded for a new trial.
The other judges concurred in the opinion of Moncure, J.
Judgment reversed.