Loring, J.,
dissenting:
The canse of demurrer, as explained by the argument, is that the assignment set forth in the petition is insufficient, because it is not made in conformity with the act of February 26, 1863. — (C. 10 U. S. L., 170.)
That act declares void all assignments of claims against the United States, ‘-'unless the same shall be freely made and executed in the presence at least of two attesting witnesses, after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof;” and then it adopts the act of 1846, which requires an acknowledgment before a magistrate, and his certificate that the assignment was fully explained to the assignor and freely executed by him.
The act of 1853 is entitled “An act to prevent frauds on the treasury,” and I think its title describes its purpose and effect, aud that it is applicable only to settlements at the treasury, and has no reference to litigation here or judicial proceedings. When the act was passed this court had not been created, and there were no means of bringing claims against the United States to legal investigation and adjudication,, and this is at least conclusive that the application of the act to cases in litigation here was not contemplated in its enactment.
The purpose of the act is to ascertain the amount due from the United States, and the person entitled to receive it. This is the proper business of this court, and if its powers were not better adapted to the purpose than the means furnished to the department, it would not have been created by legislation subsequent to the act. It has been urged at the bar that the purpose of the statute was to insure the settlement of the amount due with the original creditor; but that is one of the powers of this court, for an assignee of a chose in action can only litigate it in equity, and a court of equity always may and generally does require the assignee to be a party to the proceedings. The case (9 Peters, 319) United States v. Robinson only decides that a defendant cannot set off a claim for unliquidated damages assigned to him against the United States, any more than he could *548 against aji individual, for such a claim is not a subject for set-off in an action at .law, and he has not the legal title of it.
The act of March 3, 1863, reconstructing this court, recognizes assignments. Its 12th section provides that the petition shall be verified by an affidavit “stating that no assignment or transfer of said claim, or any part thereof, or any interest therein, had been made, except as in said petition stated.” And “ that in order to authorize the said courts to render a judgment in favor of any claimant, if a citizen of the United States, it shall be set forth in the petition that the claimant and the original and every prior owner thereof, when the claim has been assigned, has at all times borne true allegiance,” &e., &c.
Now this clearly contemplates litigation here between the United States and assignees, and judgment in favor of the latter. But where a claim has been assigned under the statute of 1853, and in conformity to it, there is nothing to litigate. The amount due, and the person to whom it was originally due, are fixed by the treasury warrant for payment, and the party entitled as assignee is fixed by the statute requirements on the instrument, and he can go to the treasury with his warrant and assignment, and get his money, and has no need to come to this court.
And if the statute of 1853 applies to litigation here, then claims adjudicated here cannot be assigned until the judgment of this court has been revised by the accounting officers of the treasury, and the amount found due from the United States to the petitioner here ascertained and allowed there; for if the original creditor of the United States on litigation here, between them and him, having recovered judgment here and received a certificate to the' Secretary of the Treasury, and obtained his warrant for payment, should assign that by an instrument attested by two witnesses and acknowledged before and duly certified by a magistrate, and the assignee should go with this assignment to the treasurer for payment, he would be told that the assignment was void under the act of 1853, because that act contemplated action at the Treasury Department, and nowhere else; and it intended that the amount due should be ascertained and the allowance of the claim be made at the treasury, and the warrant should be issued on that ascertainment and allowance, before the assignment was made; and that the adjudication of the Court of Claims was not the ascertainment of the amount due and the allowance of the claim by the department ; and that a warrant issued by the Secretary on a certificate of the Court of Claims under the act of 1863, which was mandatory on him, and left him no power of examining as to, or determining the *549 amount due, was not the warrant contemplated in the act of 1863. This would he true, and, I think, the unavoidable construction of the act according to its purpose and letter; jet bj this the act of 1853 would he made to overrule the legislation subsequent to it, creating and reconstructing this court. This is forbidden by the rules of legal construction, and I think, from all the acts mentioned, considered together, it appears that the act of 1853 does not apply to litigation here.
But if this is not so, and the assignment is insufficient for the cause shown, I think the demurrer should be overruled, because the cause of demurrer specified does not appear on the petition and cannot be inferred from it.
The demurrer assumes that the petitioner claims on an assignment of a claim.
The facts stated in the petition are, in their order of time, that in 1859 the petitioner sold and conveyed the premises to C. C. Weston, taking back from him a deed of trust “ to secure the purchase money.” Now, by that deed the legal title of the premises was vested in the petitioner not only as against Weston, but as against third persons also ; and he was not only the proper person, but the only person, who could maintain a real action, or sue at law in relation to them.
Then, in the fall of 1861 the United States took down the buildings and appropriated the materials to the public use, and the clai m for this against the United States thereupon accrued to the petitioner in his own right by virtue of his legal title, and his beneficial interest in the claim was to the extent of the purchase money, so that he had the legal title and an equitable title also.
Then, in July, 1863, Weston conveyed his interest in the claim against the United States to the petitioner, to secure to him “the purchase money of said property,” but the petitioner had his claim to that extent under the deed, and in his own right, so that the assignment conveyed nothing, and this the petitioner shows; but he was compelled to state the assignment, for the statute creating this court required him to state what persons were interested in the claim; and being under this necessity, his statement of the assignment is to be referred to that, and authorizes no inference against him; his petition would be deficient without it.