Coring, J.,
dissenting :
I think the record of the circuit court of New York, produced by the petitioners, furnishes no ground of action and no evidence for them here. It is founded on the certificate of the jury, which derives its legal effect from the statutes of New York prescribing rules for set-off; and I think the United States were not subject to those statutes or rules in the action in which the certificate was made.
The right of set-off as a substitute for a cross-action is not a common law right, but is created by statutes, aud varies with their provisions. In some, the set-off merely bars, pro tanto, the plaintiff’s claim; in others, it is a ground for a judgment on which a scire facias may issue; in others, it is a ground for a judgment on w,hich an execution may issue. And the interests of the United States involved in its litigation in the courts of the United States are not subjected to the different statutes and rules of different States in reference to set-off, *589 because the matter is specially provided for by act of Congress, March 3, 1797, c. 20, § 3 and 4, 1 U. S. L„ 512.
When the act of 1797 was passed, the law in England and in this country was that a set-off was merely a bar pro tanto of the debt sued; that much is necessarily implied from a provision for its admission, and it is all that is necessarily so implied ; and as the statute of 1797 makes no provision for anything more than the admission of the set-off, I think no greater effect for it than to bar pro tanto the debt sued can be applied against the United States.
The statute of the United States is necessarily the rule and only rule for the courts of the United States.
The case of The United States v. Robinson, 9 Peters, 319, was brought before the Supreme Court by writ of error from Louisiana, and a question made was whether the defendant could set-off against the United States a claim assigned to him. In deciding he could not, the court said: “ This is a question which arises exclusively under the, laws of Congress, and no local law or usage can have any influence upon it. The rule as to set-off in such cases must be uniform in the different States, for it constitutes the law of the courts of the United States in a matter which relates to the federal government.”
This, as its terms show, states the general rule as to set-off against the United States, and its reason ; and in reference to the particular case, the court said ; “ The practice of the State courts, which has been adopted under the act of Congress of 1824 for the courts of the United States in Louisiana, cannot affect the point under consideration ; for if it were made to appear that under the laws of that State an open account is assignable, so as to enable the assignee to bring an action in his own name, or to plead the accou it by the way of set-off, it could not be done in the present case.
“ The principles involved in this case are connected with the fiscal action of the government, and they cannot depend either upon the local practice or law of any State.”
I think this case is an express decision that the matter of set-off in suits brought by the United States in the courts of the United States, is regulated exclusively by the laws of the United States relating to set-offs; and by these, I think, the only effect of a set-off is to bar pro tanto the claim of the United States.
The counsel for the petitioners, in his printed argument, says, that in the case of The United States v. The Bank of the Metropolis 15 Peters, 377, “ the jury, certified a balance due the defendants from the United States, and the judgment upon the certificate was affirmed by *590 the Supreme Court.” But what the court affirmed was the judgment upon .the verdict, and that was, that the defendants go without day; and so it was in the record adduced by the petitioners.
The testimony of the witnesses in the case show's, I think, that the United States are indebted to the petitioners for the occupation of Mr. Eckford’s lands at Navy Point and Storr’s Harbor.
The occupation of Navy Point was from 1812 to 1847. But the petitioners aver on “ information and belief” that the rent was paid at $190 annually to the 13th March, 1823, so that there remains twenty-three years nine months and eighteen days to be paid for, which, at the rate of $190 per annum, the average estimate of the witnesses considered most reliable, amounts to $4,512.
The occupation of Storr’s farm was from 1S15 to 1833, eighteen years, and the average estimate of the most reliable of the witnesses fixes the rent at the rate of thirty-five dollars per annum, amounting to six hundred and thirty dollars. In this estimate the testimony of Mr. Maberly, adduced by the petitioners, was not used, because his estimate was founded on the use by the United States of the whole farm of four hundred acres, while the testimony was the United States used but a small part of it, of some nine or ten acres.
Other claims were made, but, I think, were not proved, and on the whole easel consider the petitioners are entitled to judgment for five thousand one hundred and forty-two dollars, the aggregate of the sums above specified.