Mr Justice M’Lean
 

 delivered the opinion of the Court.
 

 The plaintiffs brought their action against the defendant, in the district .court of Louisiana,, to recovera balance of public money which remained in his hands as late assistant deputy quartermaster-general. The pleadings being'made up, the cause was submitted to a jury, who rendered a verdict for a
 
 *324
 
 sum less by 1007 dollars, than the reported balance at the treasury department.
 

 This difference was produced by certain decisions of the court, on the trial, and to which exceptions were taken. And these exceptions are now brought before this court by a writ of error.
 

 In the first bill of exceptions, it appears, the defendant gave in evidence certain depositions, to prove the amount of loss and damage sustained by the owners of the schooner Experiment, on a voyage from New Orleans to Appalachicola, with troops and stoi.es for the government of the United States; and also a certain instrument, by which the owners of the said.schooner Experiment transferred to the defendant .their claims for compensation upon the United States, &c.
 

 And. in. the third bill of exceptions, the district attorney prayed. the court to instruct the jury, that the above claim coüld not, be pleaded- by the defendant as a set-off in this action, which prayer was refused.
 

 The first question which arises on these exceptions is, whether a claim which has been transferred to the defendant, forms a proper subject of set-off, .under the acts of congress, to a demand of the government. .'If this question shall be decided in the. negative, it will not be necessary to inquire ■ whether the claim in itself constitutes a proper item of set-off. It seems to have been presented to. the proper accounting officer of the government as a credit, and -that he refused to .allow it.
 

 This is a question which arises, exclusively, under the acts of congress, and no local law or usage can have any influence upon it.. The rule as to set-off in such cases must be uniform in the different states; for it constitutes the law of the courts of the United States, in a matter which relates to the federal government.
 

 Where a defendant has in his own right an equitable claim against the government, for services rendered or otherwise, and has presented it to the proper accounting officer of the government, who has refused to allow it; he may set up the claim as a credit on a writ brought against him, for any balance of money claimed to be due by the government. And
 
 *325
 
 where the vouchers were not in the power of thé defendant before the trial; or,from the peculiar circumstances of the case, a presentation of the claim to the treasury could not be required, the offset may be submitted for the action of the jury. But a claim for unliquidated damages cannot be pleaded by way of a set-off, in an action between individuals; and the same .-rule governs in an action brought by the government.
 

 There is no law of congress which authorizes the assignment of claims on the United States; and it is presumed if such assignment is sanctioned by the treasury department, it is only viewed as an authority to receive the money, and not as vesting in the assignee a legal right. But whatever may be the usage of the treasury department on this subject, it is clear that such an assignment, as between individuals, on common law principles, cannot be regarded as transferring to the as-signee a right to bring an action at law, on the account, in his own name; or to plead it, by way of set-off, to an action brought against him, either by an individual or the government.
 

 The claim set up by the defendant as a set-off in this case, may have been fairly obtained; and, indeed, such is the presumption, in the absence of all evidence going to impeach the assignment or the consideration on which it was made; but the assignee, not holding the legal right, cannot assert the claim, as a set-off, in this action.
 

 If any individual who holds in his hands public money, could defend himself against an action brought by the government, by purchasing claims against it, he might speculate on such claims to almost any extent. This practice would be as impolitic for the government, as it would be injurious to individuals.
 

 The practice of the state courts, which has been adopted under the act of congress of 1824, for the courts of the United States in Louisiana, cannot affect the point under consideration. For if it were made to appear, that under the laws of that state an open account is assignable, so as to enable the assignee to bring an action in his own name, or to plead the account by way of set-off, it could not be done in the present case.
 

 The principles involved in this case are connected with the fiscal action of the government, and they cannot depend either upon the local practice or law of any state.
 

 
 *326
 
 The second bill.of .exceptions states that, “on the trial of this, cause a ce.rt.ain charier party or instrument marked B, &c., and. by which the steamboat. Tennessee was chartered for the cppyeyance.of a detachment of troops under the command of colo.hel Arbuckle,. was offered in evidence : that by said charter parly.it was agreed, that if a larger quantity of'baggage and stores should, be carried in said boat than was stipulated in said charter party, that frejglu should be paid on the same, on the production,of the certificate of the said commanding officer, colonel Arbiicklel, The defendant offered in.evidence the deposition of witnesses to prove the carrying, by the said steamboat Tennessee, of a, greater quantity of baggage and stores than that stipulated in the charter party; to the introduction of which testimony the district attorney objected: because, under thé terms of the said charter-party, no other evidence than ihe certificate of the said, colonel Arbuckle could be' received to establish Hie claim to surplus freight; but the court overruled the objection, and admitted the evidence.”
 

 In thq charter party it is agreed that Breedlove, Bradford and Robeson should transport, unavoidable accidents excepted, a part of the seventh regiment of infantry, under the command' of colopel M. Arbuckle, and their baggage, together with a quantity of stores, not to exceed the bulk of eight hundred barrels, to the port, of Arkansas, &c. “ For the true and faithful performance of the above, certificates of which.,to be‘given by colonel M. Arbuckle, or officer commanding, the party of the second part binds himself, as agent of the United Slates to pay,” &c. ■
 

 And on the charter party is indorsed, “it is understood that, for all stores, &c., above the quantity specified, the same' fate shall be paid, upon producing duplicate specified certificates of the commanding officer.”
 

 The following certificate of colonel Arbuckle was indorsed •on the charter party. “ I certify, that captain A. B. Bradford did, in compliance with the foregoing' agreement, transport. from New Oileans to this place, a part of the seventh regiment of infantry, amounting to one hundred and ninety-nine, with a suitable'number of officer's and their baggage"; and that he did also transport thirty men-of the seventh regiment, not be- . longing to the Arkansas command, from New Orleans to the
 
 *327
 
 mouth of Red river. The boat was detained at Baton Rouge about nine hours, and at the mouth'of Red ,river about twenty hours. Captain Bradford furnished, for the use of the troops, six cords of wood, for which he is entitled tó compensation.”
 

 As it appears in the record that payment has been made for the services covered by thé aboyé certificate, the evidence which was admitted to be given to the jury, it is presumed, must, have been to show the transportation of freight or men, in addition to that which is certified by colonel Afbuckle. And the question as to the legality of this evidence is- raised.
 

 It appears that the agent of the government expressly stipulated to pay the money under the contract, on the certificate ■of colonel Arbuckle, or the officer' commanding the, party. And for any additional services, to those provided for in the contract, payment was to be made at the same rate, “ upon producing duplicate specified certificates of the commanding officer.”
 

 It does not appear that any excuse was offered why these certificates were, not procured ; and the question is, whether the claimant, at his option, can establish his claim by other evidence. The contract is a law between the parties in this respect; as they expressly agree that the amount of the service shall be established by the certificates of the commanding officer. ' Can it be established in any other manner, without showing the impracticability of obtaining the certificates? Is not this part of the contradi as obligatory as any other part of it;, and if so, is not the obtaining of the certificates a condition precedent to the payment of the money ?
 

 Where the parties, in their contract, fix on a certain mode by which the amount to.be paid1 shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part, which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the' contract, or show that by time or accident he is .unable to do so. And as this was not done by the defendant in the district court, no evidence to prove the service, other than the certificates, should have been admitted by the court..
 

 Had the defendant proved that application had.been made
 
 *328
 
 to the commanding officer for the proper certificates, and that he refused to give them; it would have been proper to receive other evidence to establish the claim.
 

 Other exceptions were taken to the rulings of the court in the course of the trial, but as they relate to the assigned claim set up by the defendant, it cannot be necessary to consider them.
 

 On the grounds that the district court permitted the assigned account to be given in evidence by the defendant, as a set-off; and allowed, under the circumstances stated, other evidence than the certificates of the commanding officer to prove th.e transportation account; the judgment below must be reversed, and the cause remanded for further proceedings.