(80 South. 466)

HEADLEY v. ÆTNA INS. CO.   (7 Div. 957.)

(Supreme Court of Alabama.   Nov. 28, 1918.)

**1. CONTRACTS ⟨⟩127(1)—ARBITRATION AGREE-MENT.**

Agreements which merely provide a mode or manner for ascertaining the value of property or amount of damages, losses, or profits are valid, and may be made conditions precedent to the right of action to recover damages based on such values, damages, losses, or profits.

**2. CONTRACTS ⟨⟩127(3) — INSURANCE — APPRAISAL CLAUSE.**

Clause in an insurance policy, providing for ascertainment of loss, upon disagreement as to amount thereof, by appraisers appointed one by each party and a third by the two upon their failure to agree, and providing further that no action should be commenced without first complying with requirements of such clause, *held* valid and enforceable.

**3. CONTRACTS ⟨⟩127(1)—OUSTING JURISDICTION OF COURTS.**

In view of Const. 1901, § 84, and Code 1907, §§ 2908–2923, arbitration and amicable settlement of differences between parties is favored, but agreements to oust or defeat the jurisdiction of all courts, as to all differences between the parties, are not allowed.

**4. ARBITRATION AND AWARD ⟨⟩8—VALIDITY—BAR TO SUIT.**

A general provision in a contract for the arbitration of any dispute which may arise thereunder does not oust the court.

**5. INSURANCE ⟨⟩612(3) — APPRAISAL — PREVENTION BY PARTY.**

Where policy provides for ascertainment of loss by appraisers, party who prevents ascertainment of loss from being made as provided in the policy is precluded from claiming that the award of the appraisers is a prerequisite to a suit on the policy.

**6. INSURANCE ⟨⟩574(5) — IMPOSSIBILITY OF PERFORMANCE OF AWARD.**

Where policy provides for ascertainment of loss by appraisers, award made, if impossible of performance, will not be given effect to destroy all rights of a party.

**7. INSURANCE ⟨⟩612(3)—AGREEMENT FOR APPRAISAL—NONPERFORMANCE.**

Where policy provides for ascertainment of loss by appraisers, one to be appointed by each party and the two, upon disagreement, to name a third, insured's right to recover is not barred by appraisers' willful refusal to name an umpire or to appraise property, where such refusal is no fault of insured.

**8. INSURANCE ⟨⟩567 — CONSTRUCTION — APPRAISAL AGREEMENT.**

Provision of policy providing for appraisal of loss by appraisers, will be construed against insurer.

**9. INSURANCE ⟨⟩146(3)—CONSTRUCTION.**

Insurance contract will be construed against insurer.

**10. CONTRACTS ⟨⟩278(1) — ENFORCEMENT OF AGREEMENT—BURDEN OF PROOF.**

Where parties fix certain mode by which amount to be paid shall be ascertained, the party seeking enforcement of agreement must show that he has done everything on his part which could be done to carry it into effect.

**11. INSURANCE ⟨⟩612(3) — APPRAISAL COVENANT—INABILITY TO AGREE.**

Where policy provided for ascertainment of loss by two appraisers, one to be chosen by each party and the two, upon inability to agree, to name a third, and the two appraisers named could not agree on either appraisal or umpire through no fault of insured, insured was not required to name new appraiser, and could bring action on policy.

**12. INSURANCE ⟨⟩668(14)—JURY QUESTION—INABILITY OF APPRAISERS TO AGREE.**

In action on policy providing for ascertainment of loss by two appraisers, who upon disagreement were to name a third, brought after the two named by the parties could not agree on the third, evidence *held* to justify submission to jury of whether inability to agree was due to insurer's appraiser's insistence on person living in another state, and not known to parties, while other appraiser favored person living near property injured.

**13. INSURANCE ⟨⟩662(2)—EVIDENCE—INABILITY OF APPRAISERS TO AGREE.**

In action on policy after inability of the two appraisers appointed by the parties to name third as provided by policy, evidence of correspondence between the appraisers, and between the appraisers and agents of insurance and adjustment companies, as to naming of third party, was admissible to show bona fides of the acts of both appraisers.

Appeal from Circuit Court, Talladega County; Hugh D. Merrill, Judge.

Action by Annie Carrie Headley against the Ætna Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Appellant sued appellee on a policy of insurance known as tornado or cyclone insurance. The policy contained a clause by which the parties undertook to agree that, in the event of a disagreement between them as to the amount of damages or loss suffered by the insured, then on the request or demand of either party each should select or name one appraiser, and these two appraisers should select an umpire, and that the award of any two of the three should determine the amount of the loss. It further provided that no suit should be brought on the policy until there had been a full compliance with those provisions by the insured. The reporter will set out this clause, it being the last clause in the policy.

The complaint set out the policy in full, and claimed a breach thereof by the defendant, in the failure to pay the amount as agreed in the policy.

To the complaint the defendant filed several special pleas in abatement, because the action was prematurely brought, in that there was a disagreement as to the amount of loss

or damages, and the amount had not been ascertained or determined in the mode or manner provided for in the policy, setting out the provision of the policy above mentioned.

The plaintiff moved to strike the special pleas in abatement, and demurred thereto; and, the motion and the demurrer both being overruled she filed a general and a number of special replications thereto. The demurrer was sustained as to replications 2, 4, 5, and 7, and overruled as to replications 1, 3, and 6. No ruling appears to have been made as to replications 8 and 9.

Special replications 3 and 6, in substance, alleged that the failure to appoint an umpire was not the fault of plaintiff, but that of defendant, and hence that plaintiff ought not to be allowed to prosecute this suit.

After the evidence was concluded, the trial court, at the request of the defendant, gave the affirmative charge in favor of defendant.

The trial was had on these issues as thus made, and resulted in a verdict and judgment for defendant. Plaintiff appeals, assigning many errors.

The clause of the policy referred to is as follows:

In the event of disagreement as to the amount of any loss or damage, the same shall, at the written request of either party, be ascertained by two competent and disinterested appraisers, whose appointment shall, if requested, be agreed on in writing, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit each subject of difference to the umpire; and the award in writing, under oath, of any two of them shall determine the amount of such loss, but such appraisal shall affect no other question under this policy; and until such appraisal, if requested, shall be had, the loss shall not be payable. The parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expenses of the appraisal and umpire. And claim for any loss or damage shall be forfeited by failure to furnish proofs of such loss or damage within the time and in the manner above provided, including examinations under oath and the award of appraisers, if the same or either of them have been requested. No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the date of the tornado, windstorm or cyclone.

Riddle & Riddle, of Talladega, for appellant.

Coleman & Coleman, of Birmingham, and W. B. Harrison, of Talladega, for appellee.

MAYFIELD, J. [1, 2] A covenant in a contract, whether of insurance or of other matters, to submit every matter of dispute between the parties, growing out of such contract, to arbitration or to a board of appraisers, to the end of defeating the jurisdiction

of courts as to the subject-matter, are universally held to be void, as against public policy. There need be no such express intent to so defeat the jurisdiction; if the necessary effect of the covenant will inevitably so operate, it is held to be void because against public policy. Agreements, however, which merely provide a mode or manner for ascertaining the value of property, or the amount of damages, losses, or profits, are valid, and may be made conditions precedent to the right of action to recover damages based on such values, damages, losses, or profits. Western Assur. Co. v. Hall, 112 Ala. 318, 20 South. 447; Niagara Ins. Co. v. Bishop, 154 Ill. 9, 39 N. E. 1102, 45 Am. St. Rep. 105. The clause of the insurance policy in question falls within the latter class, and is valid and enforceable. The policy of this state favors arbitration and amicable settlement of differences between parties; but it does not favor or allow agreements in advance to oust or defeat the jurisdiction of all courts, as to all differences between parties. Const. § 84; Code, §§ 2908–2923.

A general provision in a contract for the arbitration of any dispute which may arise thereunder does not oust the courts, nor bar a suit either at law or equity. Stone v. Dennis, 3 Port. 231; Kinney v. Baltimore & Ohio Employés' Ass'n, 35 W. Va. 385, 14 S. E. 8, 15 L. R. A. 142.

Where the contract explicitly makes the determination by arbitration of amounts, values, qualities, etc., a condition precedent to the maintenance of an action, it is binding, as in insurance and building contracts; but if the condition is not clearly and explicitly precedent, and is merely collateral, an action is not barred. A provision in a contract that certain matters of estimate involving no dispute shall be determined and certified by a certain person, as an engineer or architect, is binding. Campbell v. American Popular Life Ins. Co., 1 McArthur, 246, 29 Am. Rep. 591; Commercial Union Assur. Co. v. Hocking, 115 Pa. 407, 8 Atl. 589, 2 Am. St. Rep. 562; Cole Mfg. Co. v. Collier, 91 Tenn. 525, 19 S. W. 672, 30 Am. St. Rep. 898; Faunce v. Burke & Gonder, 16 Pa. 469, 55 Am. Dec. 519.

An arbitration clause, induced by fraud, folly, or undue pressure, might well be refused a specific performance, or disregarded, when set up as a defense; but when parties stand upon equal footing, and provide such a mode for the adjustment of their differences, it is not easy to assign a reason why such contracts should not stand.

Some contracts of this kind impose a condition precedent to a right of action accruing; others endeavor to prevent any right of action accruing at all. Lawson on Contracts, § 318; President, etc., of Delaware & H. Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 250; May on Insurance, § 492; 2 Parsons on Contracts, 707.

202 Ala.—25

By the common law an agreement to refer matters of difference to arbitration did not oust the jurisdiction of courts. A person could not, by his mere voluntary agreement, preclude himself from seeking relief in the court. T. R. 139; 36 L. J. Ch. 480.

[3-5] If parties to contracts of insurance covenant that in case of disagreement as to the amount of the loss or damages, or the value of the property destroyed or damaged, they will submit such difference to disinterested parties as appraisers, arbitrators, or umpires, and provide a mode for selecting such parties, and make an award of such parties a prerequisite to the bringing of a suit on such insurance policy, such covenant or agreement is valid, and will be enforced by the courts, in the absence of surprise, mistake, fraud, etc. ' If, however, one party prevents the award from being made as provided in the covenant, he will not be heard in a court of law or equity to say that an award is a prerequisite to a suit on the insurance contract. No one is allowed thus to profit by his own wrong or fault, which the other could not prevent and did not occasion.

[6-9] So, also, if the award, without fault of either party, becomes impossible of performance, it will not be given effect, to destroy all rights of a party. If the appraisers nominated by the parties should willfully refuse to name an umpire or to appraise the property, without fault of the insured, this ought not to bar his right of recovery. Such was evidently not the intention of the parties in entering into the covenant. Such covenants should be construed so as to carry out the lawful intention of the parties. Like other provisions of insurance contracts, doubtful provisions will be construed against the insurance companies, which usually prepare and draft them, and for whose benefit they are usually drawn. To construe such provisions or covenants to absolutely deprive the insured of all rights to enforce the performance of his contract, without any fault on his part and without any consideration or benefit to accrue to him, would be unreasonable, and no such construction will be accorded such provisions if any other interpretation is authorized. It has been held by some courts that if the appraisers should fail or refuse to appraise, or to appoint an umpire, or to make an award, without fault on the part of the insured, he should endeavor to have the insurance company to name another appraiser, and name one himself, who would proceed to an award, and that until he thus puts the insurance company in default, an award would be a prerequisite to the bringing of any action, under contracts like the one in question. Davenport v. Long Island Co., 10 Daly (N. Y.) 535. To this we do not agree, but concur in what was said by the Supreme Court of Illinois on the subject, as follows, in review of the Davenport Case:

"We are unable to subscribe to this doctrine, so far as the policy upon which the present suit has been brought is concerned. The contract here only requires the parties to choose appraisers once, and not twice." Niagara Fire Ins. Co. v. Bishop, 154 Ill. 9, 39 N. E. 1102, 45 Am. St. Rep. 110.

The parties not having so provided in the contract, this court does not feel at liberty to so provide for twice selecting appraisers.

Most courts hold that the insured should not lose all his rights by a refusal of the appraisers to make the award, if the refusal or failure is without fault on his part. The award is not under all circumstances a prerequisite to the bringing of an action. If the award is provided for, as in the contract under consideration, then the assured must show that it has been made, as provided, or show a valid excuse for its not being made—that it is impossible for him to have it performed, that the failure to have it performed, that the failure was unavoidable so far as he is concerned, is a valid excuse, just as the fact that the failure was induced by the fault of the insurance company.

[10] The correct rule, as we hold, is well stated by the Supreme Court of the United States:

"Where the parties, in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so." United States v. Robeson, 9 Pet. 319, 327, 9 L. Ed. 142.

See, also, Martinsburg & Potomac Railroad v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255.

This rule is also approved in Niagara Fire Insurance Company v. Bishop, 154 Ill. 9, 39 N. E. 1102, 45 Am. St. Rep. 109, having been first announced in the case of United States v. Robeson, 9 Pet. 319, 9 L. Ed. 142.

There is a line of cases holding the contrary, but we are not willing to follow it. See the case of Fisher v. Merchants' Ins. Co., reported in 95 Me. 486, 50 Atl. 282, 85 Am. St. Rep. 428, and cases therein cited and note thereto.

To apply the rule there announced, we must make a contract for the parties, to the extent of requiring them to continue to appoint appraisers until an award is obtained, or the insured lose all.

[11] Applying the law as thus declared to the facts of this case, we hold that the trial court erred in giving the affirmative instruction to find for the defendant on the plea in abatement. The evidence certainly fails to show any fault on the part of the plaintiff in not obtaining the award, unless the law required her to request new appraisers—and this we hold the contract did not require her

to do. She appointed or named an appraiser as she agreed to do; and that the two appointed did not agree is not shown to have been due to her fault. The evidence certainly tends to show that the two appraisers would not agree on an appraised value, nor on an umpire. To use the language of the witnesses, they arrived at a "deadlock." Surely this plaintiff ought not to wholly lose her right of action because, without fault on her part, the appraisers would not render an award. So far as she was concerned, this covenant was rendered impossible of performance, and without fault on her part.

Moreover, the evidence offered is not without adverse inferences that the failure to name an umpire and to reach an award was due to the fault of the insurance company, or the adjusting company, or that of their agents or servants, for whose faults this defendant was responsible. There was evidence which, if believed by the jury, tended to show that the appraiser selected by the insurance company was not wholly "disinterested," however competent he might have been. There was no evidence to show that he was either corrupt or dishonest or incompetent; but there was evidence to support an inference that he was not indifferent as to the rights of both parties, but that he was friendly to the insurance and adjusting companies. There was evidence tending to show that he was frequently employed by insurance companies and adjusting companies to appraise and adjust losses similar to the one in question, and that he was paid rather large fees and compensation as for such services by such companies. There was evidence tending to show that he was acting in the nature or character of a special agent of these companies, and that he was selected by them on the belief that he would be friendly, if not partial to their interests in such matters. As before stated, there is nothing tending to show anything corrupt, dishonest, or even bad faith on his part; yet the evidence did tend to show that he was not wholly disinterested or unbiased, as an arbitrator should be.

The facts in this case are not wholly unlike the facts in the case of Niagara Company v. Bishop, 154 Ill. 9, 20, 39 N. E. 1102, 1106, 45 Am. St. Rep. 105, 111. In that case it is said:

"While it is true that an arbitrator or appraiser is not to be regarded as the agent of the party appointing him simply by reason of the fact of his appointment, yet an arbitrator or appraiser may act in such a partial manner, and so manifestly in the interest of the party appointing him, that it may become a question of fact to be submitted to the jury, or to be determined by the court sitting without a jury, whether he conducts himself as an agent to such an extent that the party appointing him shall be held responsible for his acts. If an insurance company selects a man for appraiser, who, instead of acting as such, conducts himself in the interest of the company and as an agent for the company, the company will be held responsible for such conduct on his part as inures to the benefit of the company. If the evidence proves that he prevents an agreement, or the appointment of an umpire, by methods which show him to be the agent of the company, his acts will be regarded as those of his principal."

In that case the acts of the appraiser which were held sufficient to charge the insurance company were in part identical with acts in this case. It was there said by the court:

"The evidence tends to show that the failure of the appraisers to select an umpire was due to the fact that Donlin, the appraiser chosen by appellant, desired to appoint an umpire living in Bloomington, or Chicago, or some distant city, while Hoag, the appraiser who had been chosen by appellee, was in favor of some man as umpire whose residence was in Elgin, or near the place where the fire occurred." 154 Ill. 18, 39 N. E. 1105, 45 Am. St. Rep. 111.

That is this case mutatis mutandis. Here, the failure was due to the fact that the appraiser appointed by the insurance company insisted on appointing an umpire who lived in Birmingham, Ala., Montgomery, Ala., or Atlanta, Ga.; while the appraiser appointed by the insured insisted on appointing some one who lived in or near Sylacauga or some other place near the scene of the storm and the location of the property injured.

[12] There was evidence in this case that the appraiser, after his appointment, conferred with the agents of the insurance company who wrote the policy, and with the manager of the adjusting company, as to the appointment of an umpire; that he wrote the manager of the adjusting company, who was the agent of the insurance company in this matter, as to the name of a person who had appraised property for insurance companies or adjusting companies, and that the manager wrote to parties to ascertain the name and address of such appraiser or adjuster, and was informed as to the name, stating that he was advised that this was a good man for the insurance company; and that this man was one suggested by the insurance company's appraiser as an umpire, notwithstanding the fact that such party lived in another state and was not known to any of the parties. There was therefore ample evidence to carry this question to the jury.

[13] The correspondence between the two appraisers was admissible to show the bona fides of the acts of both appraisers; and so was the correspondence between the appraisers and the agents of the insurance and adjustment companies, as to the naming of an umpire.

We find no error as to the rulings on motions to strike pleas or demurrers to pleas or replications, which are injurious to appellant.

For the error in giving the affirmative charge for the defendant the judgment is reversed, and the cause is remanded.

Reversed and remanded

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.