### MERCHANTS' GROCERY CO. v. TALLA-DEGA GROCERY CO. et al.
### (7 Div. 789.)

Supreme Court of Alabama. March 29, 1928.

**1. Sales ⏬77(1)—Agreement that heads of contracting companies should determine amount to be paid under contract for sale of merchandise held valid, but not to constitute "arbitration."**

In contract for sale of merchandise, stipulation that heads of three contracting companies should determine amount to be paid by purchaser under contract *held* valid, but it did not constitute "arbitration."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arbitration.]

**2. Contracts ⏬127(2)—Stipulation in contract for sale of merchandise for arbitration as to all differences in case contracting parties failed to agree on amount to be paid under contract held invalid.**

In contract for sale of merchandise, stipulation that in case agents of contracting parties should fail to agree on amount to be paid under contract, all matters of difference between parties as to construction, or determination of contract, should be submitted to designated persons, whose decision should be final, *held* invalid, as against public policy.

**3. Sales ⏬199—Passing of title under sale of designated chattels depends on intention of parties.**

Passing of title under sale of chattels depends on intention of parties, which may be either express or implied, provided that subject-matter of sale has been identified and designated.

**4. Sales ⏬199—Stipulation that title to chattels should pass on execution of sale contract held to pass title as to identified chattels.**

Express stipulation in contract for sale of chattels that title should pass to buyers upon execution of contract *held* effective to pass title to buyers as to identified portions of chattels.

**5. Sales ⏬77(1)—Parties to contract for sale of chattels held entitled to resort to courts for determination of amount due thereunder, where parties failed to agree as to amount.**

Where representatives of contracting parties failed to agree on amount to be paid for chattels as they were required to do under contract of sale, either party *held* entitled to resort to courts for determination of such question, contract of sale having been fully executed as to title to substantial parts of subject-matter.

**6. Pleading ⏬35—In petition for determination of amount due under sale contract, in which arbitration agreement was invalid, allegations as to arbitration held surplusage.**

In action by party to sale contract for determination of amount to be paid thereunder, upon failure of parties designated in contract to agree as to amount, allegations as to disqualification of arbitrators under arbitration agreement, which was invalid, or effect of purchasers' partial payments as waiver of agreement to arbitrate, are not part of cause of action and may be disregarded as surplusage.

Appeal from Circuit Court, Talladega County; R. B. Carr, Judge.

Action by the Merchants' Grocery Company against the Talladega Grocery Company and another. Plaintiff takes a nonsuit and appeals from adverse rulings on pleading. Reversed and remanded.

Statement by SOMERVILLE, J.:

The plaintiff sues to recover of the two defendants the price of sundry items of personal property, merchandise and office and business equipment sold to them by a contract in writing. As to the merchandise, the price to be paid was "the invoice price of such goods plus the freight paid thereon" for merchandise purchased by the vendor subsequent to January 1, 1922; as to all other merchandise the price was to be its "reasonable cash market value"; and as to the other items the price was to be their "reasonable market value."

As to title, payment, and delivery, the contract provided "that the title to all of said property passes and becomes the property of the parties of the second part upon the execution of this said contract, and that the same is to be paid for in cash upon the completion of the inventory, appraisement and valuation as herein provided," and that delivery should be made upon payment.

The contract was for the sale of "all the goods and merchandise now on hand belonging to party to the first part in sound and merchantable condition in its warehouse and place of business"; and the complaint alleges that the merchandise in suit was on hand when the contract of sale was executed, and that it was "in sound and merchantable condition."

As to other merchandise, bought by plaintiff prior to January 1, 1922, but not here sued for, the price to be paid was its "reasonable cash market value."

The contract contained this stipulation:

"It is understood and agreed that Arnold W. Gay, *president of the Merchants' Grocery Company, on the part of party of the first part,* J. B. White, *as president* of the Talladega Grocery Company and W. L. Baker *as president* of the Long Grocery Company, *on the part of the parties of the second part,* are hereby agreed upon as the representatives *of said parties to pass on and determine the amount to be paid for said merchandise and other property herein purchased.* In case there should be any disagreement between said above-named parties *then all matters of difference as to amount to be paid or the value of the property* to be purchased, *or any matter of construction or determination in regard to the carrying out of this agreement* shall be submitted to *Leon G. Jones,* president

of the *Bank & Trust Company* of Talladega, W. H. *Boynton*, president of the *Isbell National Bank*, and *H. L. McElderry*, president of the Talladega National Bank, and the decision and determination of said last named parties or a majority of such last named parties shall be *final* and *conclusive* on the parties hereto. (Italics supplied.)"

With respect to this stipulation, the first count of the complaint alleges "that the inventory and appraisement as provided for in said contract have been completed, and that Arnold W. Gay, J. B. White and W. L. Baker who are mentioned in said contract have not been able to agree upon the valuation of said (merchandise and other items), and have failed to agree upon the amount to be paid for said merchandise and other property sold"; and, further, that at the time of the sale, and ever since, the said Leon G. Jones and W. H. Boynton were stockholders in the defendant Long Grocery Company, and the said H. L. McElderry was and has continued to be a stockholder in the defendant Talladega Grocery Company—of which facts plaintiff had no knowledge at the time of making said contract of sale.

The count then charges that these three persons are therefore "disqualified to arbitrate any differences arising between the parties to said contract, and that no differences which arose between the parties to said contract have been referred to said Boynton, McElderry, and Jones, and plaintiff elects to bring this suit without submitting to said (persons) any differences arising under said contract," and avers, further, that that part of the contract requiring such a submission to those three persons is void.

The second, third, and fourth counts are identical with the first count down through the allegation that Gay, White, and Baker have failed to agree upon the amount to be paid for said merchandise and property sold, and each count avers that no differences under said contract have been submitted to Boynton, McElderry, and Jones. The second count alleges that that part of the contract requiring such a submission to them is void. The third count alleges that that part of the contract is void, and further, that the provision was waived by defendants, after disagreement between Gay, Baker, and White, by defendants' voluntary payment to plaintiff of $50,000 as part payment of said purchase price.

The fourth count is identical with the third, except it further avers that said partial payment was made without first referring the question of the amount to be paid under the contract to Boynton, Jones, and McElderry, and without requesting of plaintiff that such a submission be made; hence a waiver of the provision.

Defendants demurred to each count of the complaint on numerous grounds, and the demurrer to each count was sustained.

Plaintiff then prayed a nonsuit because of said rulings, and appeals on the record.

Harrison & Stringer, of Talladega, for appellant.

The clause of the contract providing for submission to arbitrators all matters of difference as to amount to be paid, etc., had the effect of ousting the courts of jurisdiction, and was therefore absolutely void. 13 C. J. 457, 458; Stone v. Dennis, 3 Port. 239; 5 C. J. 72; Miles v. Schmidt, 168 Mass. 339, 47 N. E. 115; Lewis v. Brotherhood, 194 Mass. 1, 79 N. E. 802; 17 L. R. A. (N. S.) 714; Blodgett Co. v. Bebe Co., 190 Cal. 665, 214 P. 38, 26 A. L. R. 1070; Niagara F. Ins. Co. v. Bishop, 154 Ill. 9, 39 N. E. 1104, 45 Am. St. Rep. 105; Headley v. Ætna Ins. Co., 202 Ala. 384, 80 So. 466. A stockholder of one of the corporations which is a party to the contract is incompetent to serve as an arbitrator. 2 R. C. L. 372; 5 C. J. 64; Connor v. Simpson (Pa.) 7 A. 161; Supreme Council v. Grove, 176 Ind. 356, 96 N. E. 159, 36 L. R. A. (N. S.) 917; Stone v. Johnston, 167 Mo. App. 456, 151 S. W. 987.

Merrill & Field, of Anniston, and M. N. Manning, of Talladega, for appellees.

Where the parties in their contract fix on a certain mode by which the amount to be paid shall be ascertained, the party who seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. Western Assur. Co. v. Hall, 112 Ala. 318, 20 So. 447; Headley v. Ætna Ins. Co., 202 Ala. 386, 80 So. 466; Niagara F. I. Co. v. Bishop, 154 Ill. 9, 39 N. E. 1102, 45 Am. St. Rep. 109; U. S. v. Robeson, 9 Pet. 319, 9 L. Ed. 142; Holmes v. Richet, 56 Cal. 307, 38 Am. Rep. 56. Parties to a contract may stipulate that the estimate of the work done and the compensation due under it, to be made by a third party, shall be final and conclusive, and such stipulation is binding in absence of fraud or bad faith. Abercrombie v. Vandiver, 126 Ala. 532, 28 So. 491; Williams v. Chicago, etc., R. Co., 112 Mo. 463, 20 S. W. 631, 34 Am. St. Rep. 403; Hamilton v. Home Ins. Co., 137 U. S. 370, 11 S. Ct. 138, 34 L. Ed. 708. When parties to an executory contract agree that all questions or differences or disputes which may arise with reference thereto or the amount of any claim arising therefrom shall be first submitted to arbitrament, they are bound by their contract, and cannot seek redress elsewhere until the arbitrator agreed upon has been discharged. Comm. Union Assur. Co. v. Hocking, 115 Pa. 407, 8 A. 589, 2 Am. St. Rep. 564; 2 R. C. L. 364. A submission to arbitration cannot be revoked when the agreement partakes of the nature of a contract whereby important rights are gained and lost reciprocally and the submission is the moving consideration

to those acts. Johnson v. Crawford, 212 Pa. 502, 61 A. 1103; McKenna v. Lyle, 155 Pa. 599, 26 A. 777, 35 Am. St. Rep. 910; Frederick v. Margwarth, 221 Pa. 418, 70 A. 797, 18 L. R. A. (N. S.) 1246. Where one construction will make the contract legal and another will make it contrary to law or public policy, the former construction will be adopted, if reasonable. 13 C. J. 538, 539.

SOMERVILLE, J. The demurrers to the complaint present three questions of dominating importance:

(1) Was the contractual stipulation valid that, in case of disagreement between the president of the plaintiff company, on its part, and the presidents of the two defendant companies, on their part, as to "the amount to be paid" for the property sold and bought, "all matters of difference as to the amount to be paid, or the value of the property to be purchased, or any matter of construction or determination in regard to the carrying out of this agreement shall be submitted [to said three presidents], and the decision and determination of said last-named parties, or a majority [of them] shall be final and conclusive on the parties hereto?"

(2) Were these three arbitrators, in any event, disqualified to serve as such, under the conditions averred in count 1?

(3) Was the mere payment by defendants of a large part of the purchase price, without regard to and without demanding any submission to arbitration, a waiver by them of that provision?

Of course if the first question is answered negatively, the other two need not be noticed.

[1] The contract of sale left open for future determination, by agreement between the heads of the three contracting companies, each representing his own company, "the amount to be paid" by the purchaser companies to the vendor company for the property purchased under the contract. In determining "the amount to be paid," it is obvious that these party representatives would first have to determine how much of the merchandise stock on hand was "in sound and merchantable condition," that phrase being a descriptive limitation of the merchandise intended to be sold, and not a mere warranty of quality. They would then have to ascertain the original invoice price of the merchandise purchased by the vendor subsequent to January 1, 1922, and agree upon the "reasonable cash market value" of the merchandise purchased before that time, and agree upon the "reasonable market value" of the other items. These future agreements by the three presidents of the contracting parties did not constitute an *arbitration* in any proper sense, but were in fact merely postponed terms of the contract, to be adjusted by the parties themselves through their designated representatives. The stipulation for such a mode of adjustment was nevertheless valid and binding on the parties.

[2] The further stipulation that, in case those agents of the contracting parties should fail to agree upon the amount to be paid under the contract, "then all matters of difference as to the amount to be paid, or the value of the property to be purchased, or any matter of construction or determination in regard to the carrying out of this agreement, shall be submitted to [the three designated bank presidents], and the decision and determination of said last named parties, or a majority of [them] shall be final and conclusive on the parties hereto," was an agreement to submit to arbitration to the exclusion of the jurisdiction of the courts, substantially every question of right, obligation, and liability that could arise under the terms of the contract, and including a final decision as to the meaning and legal effect of every one of those terms.

Dealing with this subject in Western Assurance Co. v. Hall, 112 Ala. 318, 323, 20 So. 447, 448, it was said, per Coleman, J.:

"The principle declared in these cases [Bozeman v. Gilbert, 1 Ala. 90, Meaher v. Cox, 37 Ala. 201, and Wright v. Evans, 53 Ala. 103] is, that when the agreement to arbitrate includes the whole subject-matter of difference, so that the right of the party to resort to the courts of his country for the determination of his suit or claim is absolutely and effectually waived, such an agreement is against public policy and void. We adhere to that conclusion. The courts clearly distinguish between an agreement which refers to arbitration the extent or amount of damages to be recovered, but leaves the parties free to have the right to recover or liability of the other party determined by the courts, and those agreements which refer to arbitration the authority to determine the right of the one to recover, or the liability of the other. The former are upheld and enforced, while the latter are declared to be against public policy and not binding."

See, also, as in accord, Stone v. Dennis, 3 Port. 231, 239; Headley v. Ætna Fire Ins. Co., 202 Ala. 384, 80 So. 466; Abercrombie v. Williams, 126 Ala. 513, 532, 28 So. 491; 13 Corp. Jur. 457, § 398; 5 Corp. Jur. 20, § 7.

Under these authorities, the arbitration agreement here in question must be held as invalid entirely, and as imposing no obligation on the parties. Eliminating that provision of the contract, we must then determine the status and rights of the parties under the contract as shown by the allegations of the complaint.

The contract declares that the title to all the property sold shall pass "upon the execution of this said contract." This clause we interpret as meaning upon the signing of the written contract by the parties so as to make it a valid obligation.

[3] The passing of the title under a sale of chattels depends upon the intention of the parties, which may be either expressed or

implied. But, no matter how plainly that intention may be declared, it is obvious that the title cannot pass unless the chattels, the subject-matter of the sale, have been identified and designated. Shealy v. Edwards, 73 Ala. 175, 180, 49 Am. Rep. 43; 24 R. C. L. 15, § 275; 35 Cyc. 292 (II).

[4, 5] Here the contract identifies and designates other substantial parts of the chattels sold, though it may be conceded that, as to the *merchandise* on hand, the part sold, viz., such as was "in good and merchantable condition," was not identified or designated so that title to it could pass by force of the agreement merely. As to these identified portions of the chattels, the express stipulation of the contract was effective to pass title to the purchasers. What then was the effect of the alleged failure of the chosen representatives of the contracting parties to agree upon "the amount to be paid" under the contract of sale?

If the price is to be fixed by the agreement of appraisers, or of the parties, and the contract is *in other respects executory*, there is no sale without such agreement. Benj. on Sales, § 85. And this court has declared:

"The rule as to price, in *executory* contracts of sale, is generally said to be, that it must be certain, or capable of being made certain. Such is undoubtedly the settled doctrine, and although, *in such case*, if the agreement be that it is to be fixed by arbitration, and the sale must be considered void if the arbitrators fail to agree, a different principle prevails *where the contract of sale is complete and executed*. In the latter class of contracts, where the seller, whether by actual delivery or other like unequivocal act, *intentionally passes the property* in specific goods to the purchaser, without fixing the *price*, the law leaves the price to be adjusted by the agreement of the parties, or, if they fail to agree, by *the verdict of a jury*. If such price is left open for future adjustment by consent, the property being delivered with the expressed intention to complete the sale, the price to be agreed on is implied to be one that is fair and reasonable, and this is always the rule of recovery on a quantum meruit, or quantum valebat." Shealy v. Edwards, 73 Ala. 175, 181, 182, 49 Am. Rep. 43.

Since it is not to be presumed that a contract of sale like this is intended to be separable as to the several groups of chattels included in the sale, we think it is clear that this contract of sale, fully executed as to the title to substantial parts of its subject-matter, falls within the rule declared above, and that, the parties and their representatives having failed to agree upon the amount to be paid, either party may resort to the courts for a determination of that question.

Our conclusion is that each count of the complaint states a good cause of action, and is not subject to any of the grounds of demurrer interposed.

[6] It is not necessary to discuss the other question stated, since the allegations of counts 1, 3, and 4, as to the disqualifications of the arbitrators or as to the effect of partial payments by the purchasers as a waiver of the agreement to arbitrate, are not part of the cause of action, and may be disregarded as surplusage.

The trial court was in error in sustaining the demurrers to the several counts of the complaint, and the judgment will be reversed and the cause remanded for further proceedings in accordance herewith.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.